**WO**

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America, | No. CR-22-0271-TUC-JAS (BGM) |
| Plaintiff, | |
| v. | **REPORT AND RECOMMENDATION** |
| Esdly Amarilis Gonzalez, | |
| Defendant. | |

Currently pending before the Court is Defendant Esdly Amarilis Gonzalez's Motion to Dismiss (Doc. 39). On April 19, 2022, Defendant Nayber Eziquiel Juarez-Mantanic joined the motion. (Doc. 47). Defendant Gonzalez then filed a Supplement to [her] Motion to Dismiss (Doc. 51). The Government has filed its response and a supplement thereto; Defendants did not reply. Govt.'s Response to Def.'s Mot. to Dismiss (Doc. 88); Govt.'s Suppl. Response to Mot. to Dismiss (Doc. 102). Defendants Esdly Amarilis Gonzalez and Nayber Eziquiel Juarez-Mantanic are charged with one (1) count of intentional and forcible assault, resistance, opposition, impedance, intimidation, and interference with a Federal officer (United States Border Patrol Agent W.B.) while the agent was engaged in and on account of the performance of his official duties in violation of Section 111(a), Title 18, United States Code. Indictment (Doc. 14).

Pursuant to LRCrim. 5.1, this matter came before Magistrate Judge Macdonald for an evidentiary hearing and report and recommendation. The Magistrate Judge recommends that the District Court, after its independent review, deny Defendant Gonzalez's motion and in light of his change of plea, deny Defendant Juarez-Mantanic's

1    joiner as moot.

2

3    **I.     FACTUAL BACKGROUND[1]**

4            On February 3, 2022, United States Border Patrol ("USBP") Agent W.B. was

5    attempting to conduct an immigration inspection on a vehicle.  Compl. (Doc. 1).  USBP

6    Agent W.B. approached the vehicle and identified himself as a border patrol agent in

7    English and Spanish.  *Id.*  Defendants Gonzalez and Juarez-Mantanic, who were backseat

8    passengers, attempted to run from the vehicle.  *Id.*  When USBP Agent W.B. tried to

9    detain them, Defendant Juarez-Mantanic began hitting him in the head and shoulders.  *Id.*

10   While USBP Agent W.B. was attempting to handcuff Defendant Juarez-Mantanic,

11   Defendant Gonzalez came up behind them and began punching USBP Agent W.B. in the

12   shoulders.  *Id.*  A Homeland Security Investigations special agent arrived, witnessed the

13   assault, and assisted in the detention of the Defendants.  *See* Compl. (Doc. 1).  USBP

14   Supervisory Agent Taranto noted that neither of the Defendants were injured and no

15   photos were taken of them beyond a booking photo.  Govt's Response to Mot. to Dismiss

16   (Doc. 88) at 2.  Defendant Gonzalez participated in a video interview after her arrest,

17   which shows her neatly dressed, exhibiting a calm demeanor, and without any injuries to

18   her head, neck, or hands.[2]  *See* Def. Gonzalez's Mot. to Suppress (Doc. 34), Gonzalez

19   Interview DVD (Exh. "A") (Doc. 35).

20           Defendant Gonzalez testified that on February 3, 2022, the vehicle she was

21   travelling in was stopped by USBP.  Hr'g Tr. 5/19/2022 (Doc. 128) at 82:22–83:1.

22   Defendant Gonzalez further testified that once the officer stopped the vehicle, he said

23   something that she did not understand.  *Id.* at 83:2–6.  Defendant Gonzalez indicated that

24   the woman who was driving the vehicle wanted the passengers to exit the vehicle.  *See id.*

25   at 83:2–6, 88:1–8.  Defendant Gonzalez testified that the USBP agent grabbed and held

26   _____

27           [1] The parties disagree regarding what occurred during the altercation, and both are
     included here.  Defense counsel's decision not to photograph Ms. Gonzalez while she was in
28   custody is undisputed.

             [2] Ms. Gonzalez is wearing a mask, so the Court could not see the lower half of her face.

1    her right arm, then grabbed the radio, but she did not understand what he was saying

2    because it was in English.  *Id.* at 83:18–84:14, 87:18–25.  Defendant Gonzalez indicated

3    that her arm hurt when the USBP agent grabbed and held it, but she was able to break

4    free.  *Id.* at 84:2–17.  Once Defendant Gonzalez removed her arm from the USBP agent's

5    grasp, he grabbed her by the back of the neck using one hand.  Hr'g Tr. 5/19/2022 (Doc.

6    128) at 84:15–22, 88:20–89:1, 89:4–13.  Defendant Gonzalez testified that she had a

7    cough while being processed at the Border Patrol station.  *Id.* at 86:1–17.  Defendant

8    Gonzalez was seen by a medical provider upon her arrival at CCA; however, did not

9    receive a positive COVID test until February 13, 2022, approximately ten (10) days after

10   her arrest.  *Id.* at 86:22–87:2, 89:16–19, 91:13–92:9.  Defendant Gonzalez testified that

11   she was given pills and cream for the injuries on her arm, and an x-ray was taken.  *Id.* at

12   93:18–94:13, 95:1–25.

13       Mr. Antonio Soto, an investigator for the Federal Public Defender's Office,

14   testified that he was asked to photograph Defendant Gonzalez's alleged injuries.  *Id.* at

15   51:15–17, 56:23–57:4.  Mr. Soto contacted CCA to schedule an appointment and learned

16   that Defendant Gonzalez was in quarantine due to her recent arrival and consistent with

17   COVID protocols.  Hr'g Tr. 5/19/2022 (Doc. 128) at 57:6–10.  Mr. Soto contacted the

18   United States Marshals Service to obtain approval to photograph Defendant Gonzalez

19   while she was in quarantine, which was granted.  *Id.* at 57:11–18, 69:17–70:14.  Mr. Soto

20   scheduled his visit to CCA and was informed that Ms. Gonzalez had tested positive for

21   COVID and would not be released from quarantine until February 23, 2022.  *Id.* at

22   57:11–18, 70:15–71:20.  After consulting with the Federal Public Defender's Office, a

23   decision was made that Mr. Soto would not photograph Defendant Gonzalez until she

24   was cleared from quarantine.  *Id.* at 57:19–14, 71:21–72:3.  Mr. Soto met with Defendant

25   Gonzalez on March 1, 2022, following her release from quarantine, but did not observe

26   any bruising on her body at that time.  *Id.* at 58:15–59:2.

27       The Court has also reviewed Vanessa De La Torre's testimony and prior statement

28   and finds that her inconsistency, as well as the limitations on her testimony given her

1    potential legal exposure, make her testimony unreliable.

2

3    **II.    ANALYSIS**

4        ***A.    Photographs***

5        Defendant Gonzalez seeks dismissal of the indictment "on the grounds that the

6    government failed to preserve material exculpatory evidence when it did not photograph

7    any injury of the alleged victim, Esdly or her co-defendant, Nayber Juarez."  Motion to

8    Dismiss (Doc. 39).   This motion is based on the Government's alleged failure to

9    photograph Defendant Gonzalez once she was in custody at CCA.  *See id.*  Defendant

10   Gonzalez states that:

11       Defense counsel sent an investigator to CCA to photopgrah [sic] Esdly and
12       her injuries.  Due to COVID-19 protocols at CCA, however, Esdly was
         placed in a two week quarantine.  Soon after, defense counsel was informed
13       that Esdly was COVID positive.  The investigator therefore could not
14       photograph her before her injuries healed.  Law enforcement, however, had
         access to Esdly prior to transporting her to CCA.  As such, the government
15       had every opportunity to photograph Esdly, her co-defendant, and the
16       alleged victim in order to preserve exculpatory evidence.   Yet the
         government declined to do so.
17

18   Mot. to Dismiss (Doc. 39) at 4.

19       "[T]he Constitution requires a fair trial, and one essential element of fairness is the

20   prosecution's obligation to turn over exculpatory evidence." *Milke v. Ryan*, 711 F.3d 998,

21   1002–03 (9th Cir. 2013) (citing *United States v. Bagley*, 473 U.S. 667, 674–75 (1985);

22   *Giglio v. United States*, 405 U.S. 150, 153–55 (1972); *Brady v. Maryland*, 373 U.S. 83,

23   87 (1963)).  *Brady* material is evidence favorable to an accused and material to either

24   guilt or punishment, irrespective of the good faith or bad faith of the prosecution. *Brady*

25   *v. Maryland*, 373 U.S. 83, 87 (1963); *United States v. Collins*, 551 F.3d 914, 923 (9th Cir.

26   2009).  "[W]hen defense counsel [is] put on notice as to potential *Brady* material and

27   given the opportunity to seek it out, then a defendant likely [can]not later claim that a

28   *Brady* violation [has] occurred."  *Amado v. Gonzalez*, 758 F.3d 1119, 1137 (9th Cir.

2014); *see also Jones v. Ryan*, 733 F.3d 825, 838 (9th Cir. 2013) (defendant's "equal access to information" regarding witness eviscerates any potential *Brady* claim on habeas).

Defendant Gonzalez's motion is devoid of merit.  Defendant Gonzalez did not have any injuries at the time of arrest, her booking photo and video interview do not show any injuries, and there are no other pictures for disclosure.  Mr. Soto testified that he was given approval by the United States Marshals Service to photograph Defendant Gonzalez while she was in quarantine.  Hr'g Tr. 5/19/2022 (Doc. 138) at 57:11–18, 69:17–70:14.  It was the decision of the Federal Public Defender's Office that Mr. Soto would not photograph Defendant Gonzalez until she was cleared from quarantine.  *Id.* at 57:19–14, 71:21–72:3.  Defendant cannot blame the Government for withholding evidence that she had access to.  *Amado*, 758 F.3d at 1137.  The Court finds there was no Due Process violation and Defendant Gonzalez's motion should be denied.

### B.    Material Witnesses

Defendant Gonzalez argues that dismissal is appropriate because the Government failed to hold Vanessa de la Torre and Manuel Castro (the driver and passenger of the vehicle) as material witnesses.  Def.'s Suppl. to Mot. to Dismiss (Doc. 51).  Ms. De La Torre and Mr. Castro are United States citizens, who live in southern Arizona.  Defendant Gonzalez subpoenaed Ms. De La Torre to appear at the evidentiary hearing, and she did.  *See* Hr'g Tr. 5/19/2022 (Doc. 138).  Defendant Gonzalez is free subpoena the witnesses to appear at trial if she desires.  Furthermore, "[i]f it appears from an affidavit filed by a party that the testimony of a person is material in a criminal proceeding, and if it is shown that it may become impracticable to secure the presence of the person by subpoena, a judicial officer may order the arrest of the person and treat the person in accordance with the provisions of section 3142 of this title."  18 U.S.C. § 3144 (Section 3142 governs release or detention pending trial).  The Government has provided defense counsel with contact information for each person and there is no evidence to suggest that a subpoena will not secure their appearance at trial.

De La Torre's interview was timely disclosed and there is no *Brady* violation to support dismissal. The timeline for disclosure was as follows:

| March 2, 2022 | Indictment |
|---|---|
| March 8, 2022 | Disclosure including reports of Ms. De La Torre-Orduno's and Mr. Castro-Navarro's arrest, their respective invocations of the right to counsel, and Ms. De La Torre-Orduno's statement to HSI, including video recordings of both defendants' interviews with agents. |
| March 16, 2022 | Defense counsel notified the Government that her investigator interviewed Ms. De La Torre-Orduno. Counsel alleged that Ms. De La Torre asserted that Defendant Gonzalez was defending herself. |
| March 22, 2022 | Government filed a motion for protective order for Ms. De La Torre-Orduno's complete statement to HSI. |
| March 23, 2022 | Protective order is granted. |
| April 1, 2022 | Government disclosed unredacted audio recording of Ms. De La Torre-Orduno's interview with HSI. |
| April 7, 2022 | Government disclosed the videos of Ms. De La Torre-Orduno and Mr. Castro-Navarro's invocations to remain silent. |
| April 11, 2022 | Defendants requested a speedy trial at a status conference. |
| April 28, 2022 | Government disclosed a transcript of Ms. De La Torre-Orduno's interview. |
| July 12, 2022 | Current trial date. |

The Government has not been slow in getting information to Defendants. The Court finds that there are no due process, *Brady*, or other violations to warrant dismissal of this case.

## III.    RECOMMENDATION

For the foregoing reasons, the Magistrate Judge recommends that the District Judge DENY Esdly Amarilis Gonzalez's Motion to Dismiss (Doc. 39) and Supplement (Doc. 51). The Magistrate Judge further recommends that Defendant Nayber Eziquiel

Juarez-Mantanic joinder (Doc. 47) be denied as moot.

Pursuant to 28 U.S.C. §636(b) and Rule 59(b)(2) of the Federal Rules of Criminal Procedure, any party may serve and file written objections within fourteen (14) days after being served with a copy of this Report and Recommendation.  No reply shall be filed unless leave is granted from the District Court.  If objections are filed, the parties should use the following case number: **CR-22-0271-TUC-JAS**.

Failure to file timely objections to any factual or legal determination of the Magistrate Judge in accordance with Fed. R. Crim. P. 59 may result in waiver of the right of review.

Dated this 21st day of June, 2022.

Honorable Bruce G. Macdonald
United States Magistrate Judge